**DERRIT, Appellant and Cross–Appellee,**

v.

**DERRIT, Appellee and Cross–Appellant.**

[Cite as *Derrit v. Derrit,* 163 Ohio App.3d 52, 2005-Ohio-4777.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2004–P–0007.

Decided Sept. 9, 2005.

---

Thomas R. Buchanan, for appellant and cross-appellee.

Jonathan P. Jennings, for appellee and cross-appellant.

———————

COLLEEN MARY O'TOOLE, Judge.

{¶ 1} Appellant, Charles R. Derrit, appeals from a judgment of the Portage County Court of Common Pleas, Domestic Relations Division, granting him a divorce from appellee, Sarah M. Derrit, and awarding spousal support, designating a custodial parent, and dividing marital property. Appellee cross-appeals from the same judgment. For the reasons set forth below, we affirm in part, reverse in part, and remand.

{¶ 2} As a brief aside, appellant moved to dismiss this appeal due to a lack of a final appealable order. Appellant argued that the divorce decree was not final and appealable because a Qualified Domestic Relations Order ("QDRO") had not yet been issued. This court has decided to overrule appellant's motion to dismiss and hold that the divorce decree is a final appealable order, despite the absence of a QDRO.

{¶ 3} In support of this decision, we feel that it is impractical to withhold a party's right to appeal while the party is awaiting the actions of nonparties to divide retirement benefits and to draft a proper QDRO. It is inherent that the court, so long as it had directed in its judgment entry and finding of facts how the pension/retirement assets are to be divided, may sign and execute the QDRO. Furthermore, in the event that the retirement assets cannot be divided consistently with the judgment entry, the court, pursuant to a properly filed Civ.R. 60(B) motion, may subsequently correct the entry consistent with the plan requirements or applicable law.

{¶ 4} The record establishes the following facts. Appellant was born in 1947, and appellee was born in 1951. The parties were married on July 29, 1973, and had six children as issue of the marriage. Three of the children were minors at the time of the divorce. The record does not indicate the education levels of the parties.

{¶ 5} Appellant worked as a machinist for Goodrich Landing Gear Division for the past 26 years. According to his financial disclosure affidavit, his gross earnings were approximately $47,170 per year. However, his 2002 federal income tax return demonstrates that he earned approximately $51,000. Appellee commenced working for the Tri–County Answering Service in September 2003. She earned approximately $500 per week. Appellee also home-schooled the children.

{¶ 6} On June 18, 2003, appellant filed a complaint for divorce and requested temporary and permanent custody of the parties' three minor children, temporary and permanent spousal support, and an equitable division of the marital property. Appellee answered and counterclaimed for divorce, also requesting an equitable division of marital property. Appellee also requested custody of the minor children. This matter ultimately proceeded to a hearing before the trial court at which testimony and evidence were presented by both parties.

{¶ 7} Appellant testified that he had a 401(k) plan valued at $8,678.97 and a pension plan. According to his testimony, he would receive $1,031.74 per month from his pension, commencing in 2012. Appellant also had a life insurance policy in his name through Columbus Life Insurance Company. The policy had a cash surrender value of $10,600.36 based on guaranteed rates and of $11,075.76 based on the current rates.

{¶ 8} Evidence showed that the parties lived in a single-family home in Streetsboro, Ohio. The home was not encumbered by a mortgage or any liens. In August 2003, mold was discovered in the home. As a result, appellant and his children moved into his mother's home in Northfield, Ohio.

{¶ 9} Appellant employed ACRT, Inc., to perform a mold inspection at a cost of $445. ACRT issued an October 15, 2003 report, which found active mold growth and recommended professional removal of the mold. ACRT suggested SteriTec Services, Inc., to perform the remediation work. SteriTec provided a written estimate of $15,000 to remove the mold.

{¶ 10} Appellant also presented evidence of a home appraisal, estimating the fair-market value of the home at $60,000. The appraisal indicated that the cost of mold removal and/or restoration would amount to an additional $30,000, and the home would be worth $100,000 once the mold was removed and restoration was completed.

{¶ 11} The parties owned various vehicles, including a 2000 Ford Escort, a 1988 Chevy van, a 1993 Dodge Caravan, and a 1997 Jayco Camper. Appellant and appellee provided contradictory testimony with respect to the value of each vehicle. No official appraisals were admitted by either party.

{¶ 12} Appellant provided testimony and evidence that, in 2002, he received tax refunds in the amount of $910.06 from the federal government and $230 from the state government. Appellant also testified that appellee had removed approximately $13,548.27 from several joint bank accounts at Charter One Bank. The testimony established that, against appellant's wishes, appellee removed approximately $12,548.27 from an account held jointly by appellant and appellee. Appellee used this money to travel to and care for her mother in Arizona for several months, beginning in April 2003 and ending approximately in July 2003.

There was a dispute regarding whether appellee also removed an additional $1,000 from the children's joint bank account. Appellant produced a list of bank checks payable to appellee substantiating his testimony regarding the $12,548.27, and he testified that the additional $1,000 was taken from the children's account.

{¶ 13} The record does not show an order of temporary spousal support. But the parties agree in their appellate briefs that appellant was ordered to pay appellee $500, thereby enabling her to obtain an apartment. Despite the parties' agreement, an order for a $500 payment is not evident from the record.

{¶ 14} At the hearing, the trial court stated that it had never received a financial disclosure affidavit from appellee. The court permitted appellee to file such an affidavit after the hearing. However, appellee failed to file the affidavit. The court did receive such an affidavit from appellant.

{¶ 15} The trial court issued a judgment entry, dated December 31, 2003, granting the parties a divorce, awarding spousal support, dividing marital property, and designating custody of the children. The court stated, "[Appellant] shall be the sole residential parent and legal custodian of the minor children of the marriage and that [appellee] shall have reasonable parenting time."

{¶ 16} The court also ordered appellant to pay spousal support in the amount of $1,000 per month for 84 consecutive months. In doing so, the court considered the parties' 30–year marriage, the education of the parties, the necessary living expenses of appellee, appellant's annual income of $51,000 a year, appellee's limited ability to find work, her income of $6,000 a year, and any other relevant factors enumerated under R.C. 3105.18.

{¶ 17} The court then divided the marital property as follows: (1) appellant was awarded the marital residence with a fair market value of $60,000, finding that the costs of eliminating the mold will be $15,000, leaving $45,000 in marital equity, thereby entitling her to one-half of the equity or $22,500, (2) the life insurance policy, with a cash surrender value of $10,600, was to be divided equally between the parties, (3) the parties are each entitled to one-half the value of the federal and state tax refunds, (4) appellee was entitled to the diamond engagement ring, as it was a gift from appellant to appellee, (5) appellant is entitled to one-half of the total $14,298, which represents the $15,548 appellee withdrew from a marital savings account, which was used to visit her mother, minus $1,250 appellant withdrew from the parties' bank account for attorney fees, and (6) appellant was awarded the camper, fair market value $1,000, and appellee was allowed to select either the Ford Escort, fair market value $2,000, the Dodge Caravan, fair market value $3,000, or the Chevy van, fair market value $1,000, and (7) appellee shall be entitled to one-half the combined value of the two remaining vehicles and the camper, less the fair market value of the vehicle she chose.

{¶ 18} From the trial court's final judgment, appellant appeals and sets forth the following two assignments of error for our consideration:

{¶ 19} "[1.] The trial court erred abused [sic] its discretion and erred as a matter of law in awarding the Appellee spousal support in the amount of $1,000 a month for seven years.

{¶ 20} "[2.] The property division of the trial court is unsupported by the weight and sufficiency of the evidence and constitutes an abuse of discretion and error as a matter of law."

{¶ 21} Appellee also cross-appeals, setting forth the following assignments of error for our consideration:

{¶ 22} "[1.] The trial court's calculation of the value of the marital residence and its subsequent division of the equity based on that value was against the weight of the evidence, an abuse of discretion and error.

{¶ 23} "[2.] The trial court erred and abused its discretion in ordering a division of the value of the vehicles where the full value of whichever vehicle Ms. Derrit selects is offset against her share of the value of the other vehicles.

{¶ 24} "[3.] The trial court erred, abused its discretion and decided against the weight of the evidence in ordering Ms. Derrit to repay $7,149 to appellant.

{¶ 25} "[4.] The trial court erred and abused its discretion in awarding custody to appellant."

{¶ 26} Under appellant's first assignment of error, he argues that the trial court abused its discretion when awarding appellee spousal support in the amount of $1,000 per month for seven years. We disagree.

{¶ 27} We review a trial court's award of spousal support for an abuse of discretion. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 28} R.C. 3105.18(C) outlines the factors a trial court must consider in making a determination of spousal support. A trial court's determination shall not be based on any factor taken in isolation. Pursuant to R.C. 3105.18(C), the trial court must consider (1) the income of the parties, (2) the earning abilities of the parties, (3) the ages and health of the parties, (4) the parties' retirement benefits, (5) the duration of the marriage, (6) the appropriateness of the parties to seek employment outside the home, (7) the marital standard of living, (8) the education of the parties, (9) the assets and liabilities of the parties, (10) the

contribution of either party to the other's education, (11) the cost of education of the party seeking support, (12) the tax consequences of the spousal support award, (13) the lost income that results from the parties' marital responsibilities, and (14) any other factor the court deems relevant. A trial court must review these factors and then indicate the basis for its award of spousal support in sufficient detail to enable adequate appellate review. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 96–97, 518 N.E.2d 1197.

{¶ 29} We further note that appellant failed to request specific findings of fact and conclusions of law, under Civ.R. 52, regarding the trial court's spousal support award. In the absence of a request for separate findings of fact and conclusions of law, the trial court is required to consider only the factors of R.C. 3105.18(C); it is not required to list and comment upon each factor as part of its judgment entry. *Carman v. Carman* (1996), 109 Ohio App.3d 698, 703, 672 N.E.2d 1093. Thus, "when a party does not request findings of fact and conclusions of law, we will presume that the trial court considered all the factors listed in R.C. 3105.18 and all other relevant facts." Id., citing *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 356, 20 O.O.3d 318, 421 N.E.2d 1293.

{¶ 30} Despite the presumption that the trial court considered the R.C. 3105.18 factors, the court is still required to provide some illumination as to its underlying reasons or basis for the award of spousal support. *Lambert v. Lambert,* 11th Dist. No. 2004–P–0057, 2005-Ohio-2259, 2005 WL 1075737, at ¶ 23. The court's basis for spousal support is necessary to facilitate an adequate appellate review. Id. at ¶ 22.

{¶ 31} The trial court's judgment entry establishes that the court considered the factors set forth in R.C. 3105.18(C) and provided a basis for its award of spousal support. Specifically, the court predicated its spousal support award upon the duration of the marriage, the education of the parties, appellee's living expenses, appellant's annual income of $51,000 a year, appellee's limited ability to find work, her income of $6,000 a year, and any other relevant factors under R.C. 3105.18.

{¶ 32} Moreover, we are inclined to note that the absence of appellee's affidavit attesting to her monthly living expenses did not render the court's spousal support order an abuse of discretion. A party's living expenses are not one of the specifically enumerated factors to be considered when determining spousal support. R.C. 3105.18. See, also, *Pengov v. Pengov,* 11th Dist. No. 2002–G–2485, 2003-Ohio-6755, 2003 WL 22952829, at ¶ 35. Consequently, the trial court's consideration of a party's living expenses is discretionary and *may* be considered if the court finds such expenses to be relevant. Id. at ¶ 35.

{¶ 33} That being said, as demonstrated by the judgment entry, the court clearly considered appellee's general living expenses, but appellee failed to present evidence of her specific monthly living expenses. The court, however, was not *required* to consider appellee's monthly living expenses. Thus, the absence of appellee's affidavit providing evidence of her monthly living expenses did not result in an abuse of discretion.

{¶ 34} For these reasons, appellant's first assignment of error is without merit.

{¶ 35} In appellant's second assignment of error, he argues that the trial court abused its discretion when dividing marital property. In a divorce action, the trial court must first characterize all property as either marital property or separate property. R.C. 3105.171(B). Marital property is defined as any real property, personal property, or interest therein that is owned by either or both spouses, including their retirement benefits, that were acquired by either or both of the spouses during marriage. R.C. 3105.171(A)(3)(a)(i) through (ii). See, also, *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, at ¶ 6.

{¶ 36} By contrast, separate property includes any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). The commingling of separate property with marital property does not destroy the identity of the separate property as long as the separate property is traceable. R.C. 3105.171(A)(6)(b).

{¶ 37} It should be noted that property acquired during marriage is presumed to be marital property. "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. See, also, R.C. 3105.171. The trial court is required to make findings as to whether a party requesting the court to classify an asset as separate property has met his burden of proof and successfully traced an asset to separate property. *Letson v. Letson* (Sept. 30, 1997), 11th Dist. No. 95-T-5356, 1997 WL 663514, at *4, 1997 Ohio App. LEXIS 4445, at *11.

{¶ 38} "Once the property has been characterized as separate or marital property, it is within the discretion of the trial court to fashion an equitable division of the property." *Boggins v. Boggins*, 9th Dist. No. 3246-M, 2002-Ohio-3183, 2002 WL 1371194, ¶ 8. "In reviewing the equity of a division of property, one of the basic guidelines an appellate court is bound to follow is that the trial court's judgment cannot be disturbed on appeal absent a showing that [the court] abused its discretion * * *." *Martin v. Martin* (1985), 18 Ohio St.3d 292, 294–295, 18 OBR 342, 480 N.E.2d 1112. See, also, *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 94, 518 N.E.2d 1197; *DeChristefero v. DeChristefero*, 11th Dist. No. 2001–T–0055, 2003-Ohio-3065, 2003 WL 21377611.

{¶ 39} Appellant's second assignment of error presents various arguments regarding the trial court's division of marital property. First, appellant contends that the trial court erroneously failed to assign a value to his pension plan, which was divided equally between the parties. We agree.

{¶ 40} This court has consistently held that although a trial court is vested with substantial discretion when dividing property, an assigned value for pension funds is necessary for adequate appellate review. *Willis v. Willis* (1984), 19 Ohio App.3d 45, 48, 19 OBR 112, 482 N.E.2d 1274; *McNulty v. McNulty* (Nov. 29, 1996), 11th Dist. No. 96–A–0028, 1996 WL 761229, at *1, 1996 Ohio App. LEXIS 5400, at *4; *Osborn v. Osborn*, 11th Dist. No. 2003–T–0111, 2004-Ohio-6476, 2004 WL 2785554, at ¶ 46. A court's decision to simply divide the marital portion of a pension equally between the two parties, without designating a specific dollar value to the marital portion of the pension, represents an abuse of discretion. *Willis; McNulty; Osborn* (the trial court is required to assign *some* value to the pension plan).

{¶ 41} Here, while the trial court stated how the pension was to be divided, it failed to assign a value to the equally divided marital portion of appellant's pension. Therefore, we are precluded from an adequate appellate review with respect to the court's division of the pension and are prohibited from assigning our own value to the marital portion of the pension. See, e.g., *Osborn* at ¶ 47. This portion of appellant's second assignment of error is well taken.

{¶ 42} Appellant next argues that the trial court abused its discretion in ordering appellant to pay appellee one-half the value of the parties' federal and state tax refunds for the previous year. We disagree.

{¶ 43} The trial court may examine the circumstances surrounding a tax refund and determine that the asset is available for an equitable division because it was acquired during the marriage. ·See, e.g., *Hoover v. Hoover* (Sept. 8, 1998), 11th Dist. Nos. 93–P–0090 and 93–P–0091, 1995 Ohio App. LEXIS 3912, at *16–17. In doing so, " 'the trial court should commence with the date the marriage is judicially terminated and make adjustments therefrom either as to property to be included or as to the value of included property, as equitable considerations may require.' " Id., quoting *Day v. Day* (1988), 40 Ohio App.3d 155, 158, 532 N.E.2d 201. Thus, it is within the trial court's discretion to determine whether the tax refund was obtained during the marriage, or after the marriage had terminated, and divide the refund accordingly. See, e.g., *Rosenberger v. Rosenberger*, 11th Dist. No. 2004–G–2555, 2005-Ohio-1790, at ¶ 81–82.

{¶ 44} In the instant case, the trial court divided the federal and state tax refunds equally between the parties. From this, it is apparent that the trial court determined that the 2002 tax refunds were acquired during the marriage.

See, e.g., *Hoover*, 11th Dist. Nos. 93–P–0090 and 93–P–0091, at *17. Given the trial court's broad discretion in making this determination, we cannot say that the court's decision was unreasonable, arbitrary, or unconscionable. *Rosenberger*, 2005-Ohio-1790, 2005 WL 879270, ¶ 82. This portion of appellant's second assignment of error is not well taken.

{¶ 45} Appellant further argues that the trial court erred by failing to reduce the net equity in the marital home by the $445 he paid to ACRT to conduct a mold inspection in the marital residence. We disagree. The payment to ACRT was incidental to the appraisal of the home and incidental to litigation. It does not reduce the net equity in the marital home. Thus, this portion of appellant's second assignment of error is not well taken.

{¶ 46} Appellant also argues that the trial court erred by failing to credit him for the $500 he was ordered to pay to appellee as temporary spousal support in November 2003, thereby enabling her to obtain an apartment. Although the parties agree in their appellate briefs that the trial court ordered the $500 payment, there is no evidence in the record of such an order. In the absence of affirmative evidence establishing the order, we must presume the regularity of the proceedings below. See, e.g., *Flynn v. Flynn*, 10th Dist. No. 03AP–612, 2004-Ohio-3881, 2004 WL 1631614, at ¶ 13. Accordingly, we cannot conclude that the trial court abused its discretion by failing to credit appellant for the alleged $500 payment. Thus, this portion of appellant's second assignment of error is not well taken.

{¶ 47} Appellant next argues that the trial court erred by assigning $10,600 as the cash surrender value of his life insurance policy. In this matter, appellant himself admitted a posthearing exhibit indicating that he had a life insurance policy in his name through Columbus Life Insurance Company and that the policy had a cash surrender value of $10,600.36 based on guaranteed rates and a value of $11,075.76 based on the current rates. Therefore, we cannot conclude that the trial court abused its discretion when assigning $10,600 as the cash surrender value of appellant's life insurance policy.

{¶ 48} Lastly, appellant argues that the trial court abused its discretion by finding that the diamond engagement ring was a gift and by failing to order appellee to return the ring. Most Ohio courts consider an engagement ring a conditional gift but consider all other premarriage gifts irrevocable inter vivos gifts unless they were expressly conditioned on the subsequent marriage. *Cooper v. Smith*, 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, at ¶ 19. This approach recognizes that an engagement ring symbolizes a couple's promise to marry. Id. Once the condition of marriage has been satisfied, the engagement ring is considered a gift.

{¶ 49} There is no question in this matter that the parties were married. Accordingly, the engagement ring was properly considered a gift from appellant to appellee. The trial court did not abuse its discretion by refusing to order appellee to return the ring to appellant. This portion of appellant's second assignment of error is not well taken.

{¶ 50} To summarize, the trial court abused its discretion by failing to assign a value to the marital portion of appellant's pension. However, the court properly divided the parties' income tax refunds, omitted a credit for appellant's alleged $500 payment to appellee, assigned $10,600 as the cash value of his life insurance policy, omitted a credit to appellant for the cost of the mold inspection of the marital home, and granted appellee possession of the engagement ring.

{¶ 51} We now turn to appellee's first assignment of error, under her cross-appeal, in which she contends that the trial court abused its discretion when valuing the marital residence. This assignment of error is without merit.

{¶ 52} It is clear that the trial court provided a valid rationale for its valuation of the residence. The court stated, "Husband is awarded the marital residence with a fair market value of $60,000. The Court finds the costs of eliminating the mold problem will be $15,000, leaving $45,000 in marital equity. Wife is entitled to one-half of the equity or $22,500."

{¶ 53} These values are supported by competent, credible evidence. Appellant admitted the appraisal estimating the *present* fair market value of the home at $60,000. Appellant also admitted a statement by SteriTec Services indicating that it would cost $15,000 to perform the remediation work. The removal of the mold was necessary to make the house inhabitable. It follows that the trial court's conclusion that there was $45,000 of equity in the home was supported by the evidence.

{¶ 54} Although there was some evidence of a potential future increase in the home's value following the removal of the mold and various renovations, the court properly utilized the *present* value of the residence to determine an equitable division of the marital property. See, e.g., *Crawford v. Crawford* (Dec. 31, 1991), 11th Dist. No. 90–A–1555, 1991 WL 279442, at *3, 1991 Ohio App. LEXIS 6340, at *7–8. Thus, we cannot conclude that the trial court abused its discretion by awarding appellee $22,500 as one-half the equity of the home. Appellee's first assignment of error is without merit.

{¶ 55} In appellee's second assignment of error, she contends that the court's language dividing the parties' vehicles is ambiguous and, therefore, creates an inequitable division. The court's judgment entry states as follows with respect to the division of the parties' vehicles:

{¶ 56} "The parties have a 2000 Ford (fair market value $2,000), a 1993 Dodge Caravan (fair market value $3,000), a 1988 Chevy van (fair market value $1,000), and a 1997 Jayco camper (fair market value $1,000). [Appellant] is awarded the camper. [Appellee] may select the vehicle she wishes and [appellant] shall execute any documents necessary to transfer title. [Appellee] shall then be entitled to one-half the value of the other vehicles and camper less the fair market value of her vehicle."

{¶ 57} The foregoing language is clear and unambiguous. Specifically, appellee was to choose a vehicle from either the Ford, Dodge Caravan, or Chevy van. After appellee chose a vehicle, she was entitled to one-half of the value of the remaining two vehicles *and camper,* less the fair market value of the vehicle she chose. Thus, appellee's second cross assignment of error is without merit.

{¶ 58} In appellee's third assignment of error, she argues that the trial court abused its discretion when it ordered her to repay $7,149 to appellant. The funds at issue in this matter are apparently those that appellee received when she withdrew money from her children's joint account and withdrew money from marital bank accounts to provide funds for her travel expenses to see her mother in Arizona during the spring of 2003. The court specifically stated:

{¶ 59} "[Appellee] took $15,548 from a marital savings account. [Appellant] also took funds from a bank account for home repairs, automotive repairs, and $1,250 for Attorney fees. The $1,250 for Attorney fees should be deducted from the funds [appellee] took, leaving a total of $14,298 taken by [appellee], who shall be responsible for repayment of one-half ($7,149) to appellant."

{¶ 60} These funds were apparently used during the marriage to pay for travel expenses. Thus, the court could require appellee to repay these funds through a distributive award if it found evidence of financial misconduct. R.C. 3105.171(E)(3) states that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

{¶ 61} Here, the court's judgment entry fails to provide an adequate analysis as to its order that appellee repay appellant $7,149. The entry fails to establish whether the court's basis for ordering such an award was financial misconduct. Therefore, we are unable to provide an adequate appellate review, and appellant's third cross-assignment of error has merit to the limited extent indicated. Upon remand, the trial court is to provide further analysis regarding the $7,149 order of repayment to facilitate an adequate appellate review.

{¶ 62} Appellee's fourth assignment of error argues that trial court abused its discretion by granting appellant custody of the parties' minor children. We agree.

{¶ 63} It is well settled that the trial court has broad discretion in allocating the custody of minor children, and such decisions will not be overturned absent an abuse of discretion. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 674 N.E.2d 1159, paragraph one of the syllabus. When resolving a child-custody dispute, the best-interest-of-the-child standard guides the trial court. *Gardini v. Moyer* (1991), 61 Ohio St.3d 479, 483, 575 N.E.2d 423. R.C. 3109.04(F)(1) provides that in determining the best interest of a child, the trial court must consider all relevant factors, including but not limited to the following:

{¶ 64} "(a) The wishes of the child's parents regarding the child's care;

{¶ 65} "(b) If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court;

{¶ 66} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

{¶ 67} "(d) The child's adjustment to the child's home, school, and community;

{¶ 68} "(e) The mental and physical health of all persons involved in the situation;

{¶ 69} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

{¶ 70} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

{¶ 71} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

{¶ 72} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parents' right to parenting time in accordance with an order of the court;

{¶ 73} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

{¶ 74} In general, when evaluating the foregoing factors, "the best interest of the child is the paramount concern in any child custody case." *Rowe v. Rowe* (Dec. 17, 1999), 11th Dist. Nos. 98–L–073 and 98–L–163, 1999 WL 1313628, at *3, 1999 Ohio App. LEXIS 6122, at *7. Moreover, " 'in the absence of

any indication to the contrary, [this court] will assume that the trial court considered all of the relevant factors' which must be reviewed in determining the best interest of a child.'" *Pickett v. Pickett*, 11th Dist. No. 2001–L–136, 2002-Ohio-3128, 2002 WL 1357163, at ¶ 33, quoting *Sickinger v. Sickinger* (Apr. 5, 1996), 11th Dist. No. 95–A–0046, 1996 Ohio App. LEXIS 1428, at *11.

{¶ 75} In the trial court's judgment entry, it ordered that "[appellant] shall be the sole residential parent and legal custodian of the minor children of the marriage and that [appellee] shall have reasonable parenting time." However, the court failed to provide a basis for its determination. Accordingly, the trial court's failure to provide a basis for its custody designation results in an abuse of discretion, and appellee's fourth assignment of error has merit to the limited extent indicated. Upon remand, the trial court must provide some basis for its award of custody to appellant.

{¶ 76} In conclusion, appellant's first assignment of error and portions of his second assignment of error are without merit. The portion of appellant's second assignment of error regarding his pension plan has merit, and that portion of the cause is hereby remanded to allow the trial court to assign a value to the marital portion of the pension plan, which is being divided equally. Appellee's first and second assignments of error are without merit. However, appellee's third and fourth assignments of error have merit to the limited extent indicated. Upon remand, the trial court is to provide a basis for its division of funds and a basis for its designation of appellant as the custodial parent.

{¶ 77} Accordingly, we hereby affirm in part, reverse in part, and remand this matter for further proceedings consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

FORD, P.J., concurs.

GRENDELL, J., concurs in part and dissents in part.

GRENDELL, Judge, concurring in part and dissenting in part.

{¶ 78} I concur with the majority's rulings on appellant's first and second assignments of error, as well as appellee's first and second assignments of error on cross-appeal. However, I disagree with the majority's rulings on appellee's third and fourth assignments of error on cross-appeal and respectfully dissent as to those rulings.

{¶ 79} As to appellee's third assignment of error, the trial court found that appellee "took $15,548." Such unilateral taking of marital funds constitutes

"financial misconduct" under R.C. 3105.171(E)(3). See, also, *Donato v. Donato* (June 26, 1998), 11th Dist. No. 96–L–224, 1998 WL 553025, at *4–5, 1998 Ohio App. LEXIS 2925, at *13–14 (courts may find financial misconduct in cases where marital assets are unilaterally dissipated, even if such dissipation occurs during the course of the marriage). There was, and is, no need for the trial court to state the obvious—one spouse's unilateral appropriation of marital assets for his or her individual use is financial misconduct. Moreover, such conduct also constitutes "dissipation" of marital assets. R.C. 3105.171(E)(3); *Donato,* 11th Dist. No. 96–L–224, 1998 WL 553025, at *4–5, 1998 Ohio App. LEXIS 2925, at *13–14. No further explanation by the trial court is required. Appellee's third assignment of error on cross-appeal is without merit.

{¶ 80} Likewise, appellee's fourth assignment of error on cross-appeal has no merit. The trial court granted appellant custody of the parties' minor children. As the majority correctly notes: " '[I]n the absence of any indication to the contrary, [this court] will assume that the trial court considered all of the relevant factors' which must be reviewed in determining the best interest of a child." *Pickett v. Pickett,* 11th Dist. No. 2001–L–136, 2002-Ohio-3128, 2002 WL 1357163, at ¶ 33, quoting *Sickinger v. Sickinger* (Apr. 5, 1996), 11th Dist. No. 95–A–0046, 1996 Ohio App. LEXIS 1428, at *11.

{¶ 81} Neither appellee nor the majority provides any legitimate "indication to the contrary" warranting this court's disregard of the presumption of propriety expounded in *Pickett.* Despite *Pickett* and the absence of a contrary indication, the majority ignores the presumption of propriety and shifts the burden onto the trial court "to provide a basis for its [custody] determination." The majority further rules that the court's "failure to provide a basis for its custody designation results in an abuse of discretion." I disagree. The majority's rulings conflict with this court's prior rulings in *Pickett* and *Sickinger.* Appellee's fourth assignment of error on cross-appeal should be overruled.

{¶ 82} Accordingly, I concur in part and dissent in part, as noted above.