[Cite as *Sassya v. Morgan*, 2018-Ohio-3445.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**


| | | |
|---|---|---|
| LEBY SASSYA, | **:** | **O P I N I O N** |
| Plaintiff-Appellee, | **:** | |
| - vs - | **:** | **CASE NO. 2015-T-0026** |
| CAROL LYNNE MORGAN (f.k.a. SASSYA), | **:** | |
| Defendant-Appellant. | **:** | |


Civil Appeal from the Trumbull County Court of Common Pleas, Domestic Relations Division, Case No. 2011 DS 00293.

Judgment:  Affirmed.


*Elise M. Burkey*, Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, OH  44483 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH  44240 (For Defendant-Appellant).


COLLEEN MARY O'TOOLE, J.

{¶1}    Appellant, Carol Lynne Morgan, f.k.a. Sassya ("Wife"), appeals from the February 13, 2015 judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, overruling her objections to a magistrate's decision.  Finding no reversible error, we affirm.

{¶2}    By way of background, on December 18, 1994, Wife and appellee, Leby Sassya ("Husband"), were married in Kuwait.  From 1995 to 2009, five children were

born as issue of the marriage. Husband was employed at First Energy and earned a base annual salary of $60,000. Wife was not employed and earned $0.

{¶3} On August 30, 2011, the parties filed a petition for dissolution with an attached separation agreement. The separation agreement contained terms covering all matters relating to the dissolution of the parties' marriage, including various aspects of the division of the parties' property and debt, spousal support (both parties waived spousal support), child support (Husband agreed to pay $1,800 per month), and the allocation of parental rights and responsibilities. In regard to the allocation of parental rights, the separation agreement stated that the parties agreed to share the rights and responsibilities of their children. Attached to the separation agreement was the Trumbull County Standard Companionship Rules.

{¶4} Following a hearing, the trial court filed a dissolution decree on October 3, 2011 granting the parties a dissolution on the grounds of incompatibility. The dissolution decree correctly set forth all the terms of the separation agreement pertaining to the parties' agreed upon property division as well as spousal and child support issues. However, the dissolution decree did not correctly set forth the parties' agreement relating to the allocation of parental rights. Rather, the dissolution decree provided that Wife shall be the custodial residential parent for all five children.

{¶5} Due to the inconsistency between the separation agreement and the dissolution decree, Husband filed a motion on January 30, 2012 to modify the dissolution decree to conform to the separation agreement and to modify the parenting order and child support payments. In support of his motion, Husband indicated that he has been the residential parent for the two eldest children on a continuous and uninterrupted basis. Three months later, Husband filed an amended motion requesting

2

that the court vacate the dissolution decree because it failed to incorporate the terms of the separation agreement regarding the parenting of the minor children.

{¶6} A hearing was held before a magistrate on May 2, 2012. Pursuant to his decision, the magistrate ordered companionship, scheduled a hearing to correct the differences between the separation agreement and dissolution decree, and appointed a guardian ad litem for the minor children. Two days later, the trial court adopted the magistrate's decision.

{¶7} However, on June 13, 2012, the trial court determined that the separation agreement and dissolution decree were not in agreement and thus, vacated the dissolution decree. The court did so without revisiting the parties' separation agreement which was part of the order of dissolution. Thus, the parties' separation agreement that they had entered into was no longer valid and was essentially found to be void by the trial court.

{¶8} No appeal was filed as a result of the trial court's judgment. Rather, on June 15, 2012, Husband filed a motion to convert the matter into a divorce action. The court granted Husband's motion. On June 19, 2012, Husband filed a complaint in divorce to which Wife filed an answer.

{¶9} On October 3, 2012, the magistrate issued an order, which was filed two days later, setting forth a temporary custody and companionship schedule as well as a temporary child support order. Husband was directed to pay child support in the sum of $743 per month. Two months later, the magistrate issued another order in which the parties agreed and it was determined that the termination date of the marriage was September 12, 2011.

{¶10} On January 11, 2013, Husband filed a motion for summary judgment on the issue of property division. In his motion, Husband alleged that the separation agreement had resolved all of the property issues. He also asserted that following the dissolution decree, the parties had complied with all of the terms pertaining to the property issues.

{¶11} Wife filed a response two months later. In her response, Wife asserted that she had waived all property claims including her claims to Husband's pension and retirement plans and for spousal support, despite an inequity in income, in exchange for his agreement to pay $1,800 per month in child support, an upward deviation from the Child Support Guidelines. She further claimed that once the dissolution decree was vacated, all issues were to be revisited, and that Husband's motion sought an inequitable distribution.

{¶12} On April 24, 2013, the magistrate ordered that summary judgment be granted in favor of Husband after determining all property issues were resolved. Morgan filed a motion to set aside the magistrate's order pursuant to Civ.R. 53(D)(2)(b) and a motion for stay, which were denied by the trial court on May 15, 2013.

{¶13} A final hearing was held on July 10, 2013. No transcript from that hearing was filed. The next day, the trial court filed a divorce decree granting the parties a divorce on the ground of uninterrupted separation. The court decreed that the marital property had been divided and that no issue remained concerning the division of property. The court ordered that neither party shall pay spousal support to the other. Further, pursuant to prior orders, the court named Husband as the residential parent and legal custodian of the parties' two eldest children, and named Wife as the residential parent and legal custodian of their three youngest children. The court

indicated that the parties shall continue to comply with the court's parenting and companionship guidelines on a reciprocal basis so that all five children are together during all companionship periods. The court preserved its prior order that Husband pay $743 per month in child support.

{¶14} Wife filed an appeal, Case No. 2013-T-0084, asserting that the trial court erred in granting summary judgment to Husband and determining that all property issues were resolved. On July 28, 2014, this court reversed the trial court's judgment and remanded the matter for the trial court to determine an equitable property division and reassessment of spousal and child support. *Sassya v. Morgan*, 11th Dist. Trumbull No. 2013-T-0084, 2014-Ohio-3278 (Grendell, J., concurred in judgment only with a Concurring Opinion; Rice, J., concurred in judgment only). Specifically, this court found that the separation agreement was voided when the dissolution decree was vacated and that the trial court erred in granting summary judgment in favor of Husband based on the terms of the separation agreement. *Id.*

{¶15} Pursuant to this court's remand, further proceedings were conducted. The parties entered into stipulations regarding the division of assets. The magistrate issued a decision on November 14, 2014 and time-stamped December 19, 2014. Wife filed objections. On February 13, 2015, the trial court overruled Wife's objections, specifically stating:

{¶16} "Parties have stipulated to the division of assets as shown in Exhibit A which is attached. This distribution of assets does not exclude the $45,000.00 that [Husband] was to pay [Wife]. That and spousal support were issues that the court took testimony. The court reviewed the testimony provided and exhibits presented and the credibility of the witnesses and determines that [Husband] did pay [Wife] $45,000.00 as

5

evidence by exhibits of checks given and exhibits of a cash withdrawal. [Husband] owes [Wife] $3,193.79 to equalize the distribution of assets. The court after review of the testimony and exhibits presented that [Wife] was married and divorced at least once and possibly twice since her marriage to [Husband]. Therefore, court will not order spousal support in this case. Parties have a child that is now emancipated. Commencing 11/01/2014, [Husband] to pay $885.00 per month plus poundage as child support."

{¶17} Wife filed the instant appeal, Case No. 2015-T-0026, from the foregoing judgment. This court dismissed the appeal for failure to prosecute on August 3, 2015 because Wife did not file a brief. Wife later filed a motion to reinstate on January 18, 2017. On March 31, 2017, this court granted Wife's motion and reinstated this appeal. Because a transcript was unavailable, the parties filed App.R. 9(C) statements in July 2017. A hearing was held before a new magistrate on August 24, 2017. On September 1, 2017, the trial court approved and adopted Husband's App.R. 9(C) statement of the case, which provides in its entirety:

{¶18} "The Parties, Plaintiff-Appellee Leby Sassya and Defendant-Appellant Carol Lynne Morgan (fka Sassya) were before Magistrate Anthony Natale for a hearing on November 14, 2014. The hearing was scheduled following a remand from the Eleventh District Court of Appeals at Case No. 2013 TR 00084 to address the matters as directed under said remand. The matters of custody, visitation and child support were previously addressed by the trial court by Order entered on September 19, 2014. Therefore, the remaining issues to be determined by the trial court were matters of the property division and spousal support. Additionally, the matter of child support was also readdressed and modified by the Order of November 14, 2014, due to the fact that

6

since the prior order, the parties' eldest child had emancipated. Child support was therefore recalculated to reflect the same.

{¶19} "Prior to the commencement of testimony, Mr. Sassya presented 'Exhibit A' which he had prepared summarizing the assets and debts. The parties, their counsel, and the Magistrate reviewed and discussed 'Exhibit A,' including the fact that the values set forth on 'Exhibit A' included the values for the real estate, mortgage balance, credit cards, and vehicles as identified by Ms. Morgan on her Affidavit of Property and Affidavit of Income and Expenses which were filed as part of the original dissolution, and which was part of the court record. Such Affidavits had been signed by Ms. Morgan on August 30, 2011. Following the discussion, the parties agreed by stipulation, to the identification, valuation, and to the division of assets as set forth in 'Exhibit A' which is attached to the Magistrate's Decision. However, one matter remained in dispute pertaining to the property division, which was whether or not Mr. Sassya had paid Ms. Morgan the full sum of $45,000.00 for the cash payment owed to her. Accordingly, testimony would be taken on that issue and the issue of spousal support.

{¶20} "Mr. Sassya testified that he had paid Ms. Morgan the full sum of $45,000.00, including several checks totaling $40,000.00 and one cash payment of $5,000.00. Ms. Morgan disputed receiving the cash payment. Defendant's Exhibit A showed the transaction history from Mr. Sassya's bank account showing the checks he had written totaling $40,000.00 on October 12, 2011. It also showed the cash withdrawal of $5,000.00 he made on September 23, 2011. Also presented as part of Defendant's Exhibit A were the several cancelled checks and a receipt showing a cash debit on September 23, 2011. (See also Plaintiff's Exhibit 1.) Ms. Morgan denied

7

receiving the cash payment. She asserted that the reason why there is blank line on the receipt, Plaintiff's Exhibit 1, is because she did not receive the funds and did not sign the receipt. Mr. Sassya asserted that Ms. Morgan was provided the cash in the sum of $5,000.00 on September 23, 2011, the same day he withdrew the funds, but that Ms. Morgan refused to sign the receipt when he asked her to do so.

{¶21} "Testimony was also presented regarding the issue of spousal support, including testimony regarding the various spousal support factors under Ohio R.C. 3105.18.

{¶22} "Both parties testified that they were married on December 18, 1994, and had five minor children at the time of the original dissolution, and that the two oldest were in Mr. Sassya's custody and the three youngest were in Ms. Morgan's custody. The eldest child, Hanna, had since emancipated. The parties also agree that the termination date of their marriage was September 12, 2011, the date of the final hearing on their dissolution.

{¶23} "Mr. Sassya presented his testimony regarding his employment and Plaintiff's Exhibit 3, which was his Affidavit of Income and Expenses as well as Plaintiff's Exhibit 4, which were his W2s showing his income and earnings for the years 2011, 2012 and 2013.

{¶24} "Mr. Sassya testified that he was aware that Ms. Morgan had been married and divorced since their dissolution. He further testified that Ms. Morgan had also informed him that she had since gotten married again for a second time since the marriage to Mr. Sassya had been terminated. He was uncertain of her current marital status. Mr. Sassya also testified to and presented, Plaintiff's Exhibit 2, screenshots of

messages that Ms. Morgan had forwarded to him regarding her relationship with an individual named 'Fathy', in which she states that they were married.

{¶25} "Mr. Sassya testified on cross-examination that during his marriage to Ms. Morgan, Ms. Morgan was a stay-at-home mom for much of the time, and that she had taken good care of the children.

{¶26} "Ms. Morgan testified to the duration of the marriage to Mr. Sassya, her work history, that she has a high school diploma and some adult education classes and training to be a dental assistant. She testified that after the parties were married in Kuwait, they first lived in Florida and then moved to Indiana before moving to Ohio. She testified that she did not work when she became pregnant with the parties' first child due to a high-risk pregnancy. She testified that while she stayed home, Mr. Sassya worked at Home Depot and also attended YSU to obtain his bachelor's degree in engineering and then his master's degree. She stated that after their oldest child, Hanna, was born, she worked for three dentists. However, at the time the dissolution was filed in 2011, she was not working. She testified that Mr. Sassya did not allow her to work and that she was not permitted out of the house. When questioned regarding her efforts to obtain employment since the dissolution, she testified that she can't afford daycare for the children, that she has applied at Walmart, Lowe's and IHOP, but that she is unable to work right now because of the children's schooling which scheduled she described as 'strange.' She also indicated that she was not working because of an incident where she asserted that Mr. Sassya had threatened her with a machete when she had tried to perform work doing catering in the evenings. She testified that this occurred on her first day on the job and she lost the job because of it.

**{¶27}** "Ms. Morgan admitted to marrying Baljit Singh shortly after her dissolution from Mr. Sassya. The marriage to Mr. Singh occurred on November 22, 2011, which ended in a divorce entered on May 17, 2013 at Case No. 2012 DR 00515 entered in Mahoning County. She testified that Mr. Singh was fearful of Mr. Sassya because of the machete incident and that he took off and she divorced him and that her and Mr. Singh never lived together.

**{¶28}** "Ms. Morgan stated that she next met Fathy Elkhodiary who was from Egypt. She visited with him in Egypt for one month in August 2013. She initially denied marrying him, and stated that she and Fathy just talk from time to time. She then testified that she had sent the screenshot messages, Plaintiff's Exhibit 2, to Mr. Sassya because she wanted Mr. Sassya to help her print them out to give to a police detective. She stated that she and Fathy were married but it was not a legal marriage, only an Islamic marriage. She indicated that Fathy and his brother had abused her when she went to see him in Canada in December 2013, and that she filed a criminal suit against him in Canada. She indicated that she had been abused again in March 2014 when she went to attempt to obtain some type of immigration paperwork. Fathy was unable to come to the US from Canada."

**{¶29}** In this appeal, Wife asserts the following two assignments of error:[1]

**{¶30}** "[1.] The trial court's finding that [Husband] had paid [Wife] the sum of $5000.00 in cash was against the manifest weight of the evidence.

**{¶31}** "[2.] The trial court erred and abused its discretion by failing to award [Wife] spousal support."

---

1. Wife only provides a numerical designation to her first argument. However, we determine from the Table of Contents and Argument sections of her brief that Wife has two separate arguments. Thus, we will address each of her arguments as two separate assignments of error.

**{¶32}** In her first assignment of error, Wife argues the trial court's finding that Husband paid her $5,000.00 in cash is against the manifest weight of the evidence.

**{¶33}** "'[T]he Supreme Court of Ohio has clarified the analysis used to determine whether judgments in civil cases are against the manifest weight of the evidence. *Eastley v. Volkman,* 132 Ohio St.3d 328, * * *, 2012-Ohio-2179, ¶12-23, (* * *). In *Eastley,* the Supreme Court noted that most of Ohio's appellate courts applied the analysis set forth in *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, * * *, (* * *). *Eastley* at ¶14. In *C.E. Morris,* the court held: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris* at the syllabus. As the court in *Eastley* observed, this is the standard applicable to determining the sufficiency of the evidence underpinning a judgment. *Id.* at ¶14, * * *. The court held that the proper analysis for determining challenges to the manifest weight of the evidence is the same in civil and criminal cases, and that *State v. Thompkins,* 78 Ohio St.3d 380, * * *, (* * *) (1997) applies to both.'" (Parallel citations omitted.) *Patterson v. Godale,* 11th Dist. Lake Nos. 2014-L-034 and 2014-L-042, 2014-Ohio-5615, ¶12, quoting *Avery Dennison Corp. v. TransAct Technologies, Inc.,* 11th Dist. Lake No. 2012-L-132, 2013-Ohio-4551, ¶20.

**{¶34}** "'"[A] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial [court] is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *DeWitt v. DeWitt,* 3d Dist. No. 9-02-42, 2003-Ohio-851, ¶11, quoting *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, (* * *).'" *Martin v. Martin*, 11th Dist. Trumbull No. 2015-T-0025, 2016-Ohio-7551, ¶23.

11

{¶35} In this case, Wife asserts Husband failed to pay her the last $5,000 out of the final $45,000 he owed her in 2011. The trial court took testimony on the issue and reviewed exhibits. As stated, pursuant to this court's remand, a hearing was held before a magistrate on November 14, 2014. The parties were present and testified. On March 31, 2017, this court reinstated Wife's present appeal. Because a transcript of the proceeding was unavailable, the parties filed App.R. 9(C) statements in July 2017, which contained no real disputes. A hearing was held before a new magistrate on August 24, 2017. Wife represented herself pro se and provided testimony regarding the issues of the $5,000 payment and spousal support. Husband was also at the hearing and was represented by counsel. On September 1, 2017, the trial court approved and adopted Husband's App.R. 9(C) statement of the case.

{¶36} Both parties admit that Husband paid Wife $40,000. Husband had testified he paid the additional $5,000 in cash but that Wife would not sign the receipt slip, which contained a line for a signature. Husband kept and provided the court with a bank withdrawal slip, showing that he had withdrawn the money. Wife, on the other hand, at the August 24, 2017 hearing, stressed that Husband never paid her.

{¶37} This issue essentially boils down to "he said, she said." Based on the facts presented, the trial court found Husband more credible. There is no indication that the trial court lost its way in determining Husband paid Wife $5,000. This court should be guided by a presumption that the findings of the trial court are correct. *Martin, supra,* at ¶23. The judgment of the trial court is not against the manifest weight of the evidence.

{¶38} Wife's first assignment of error is without merit.

12

**{¶39}** In her second assignment of error, Wife contends the trial court erred in failing to award her spousal support.

**{¶40}** "'(W)hen reviewing the propriety of a trial court's determination in a domestic relations case,' including spousal support, '(the Ohio Supreme Court) has always applied the "abuse of discretion" standard.' *Booth v. Booth,* 44 Ohio St.3d 142, 144 * * * (1989)." *Riley v. Riley*, 11th Dist. Ashtabula No. 2012-A-0037, 2013-Ohio-1604, ¶14. Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto,* 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

**{¶41}** In addressing a similar matter, this court stated in *Taylor v. Taylor*, 11th Dist. Trumbull No. 2015-T-0110, 2017-Ohio-2594, ¶14-31:

**{¶42}** "In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors listed in R.C. 3105.18(C)(1)(a) through (n). A trial court has broad discretion to examine all the evidence before it determines whether an award of spousal support is appropriate. *Holcomb v. Holcomb,* 44 Ohio St.3d 128, 130 * * * (1989). R.C. 3105.18(C)(1) states:

**{¶43}** "'In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, (* * *) the court shall consider all of the following factors:

13

{¶44} "'(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

{¶45} "'(b) The relative earning abilities of the parties;

{¶46} "'(c) The ages and the physical, mental, and emotional conditions of the parties;

{¶47} "'(d) The retirement benefits of the parties;

{¶48} "'(e) The duration of the marriage;

{¶49} "'(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

{¶50} "'(g) The standard of living of the parties established during the marriage;

{¶51} "'(h) The relative extent of education of the parties;

{¶52} "'(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

{¶53} "'(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

{¶54} "'(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

{¶55} "'(l) The tax consequences, for each party, of an award of spousal support;

14

**{¶56}** "'(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

**{¶57}** "'(n) Any other factor that the court expressly finds to be relevant and equitable.'

**{¶58}** "There is nothing in R.C. 3105.18 requiring a trial court to make specific findings of fact regarding its award of spousal support, and in the absence of a specific request for findings of fact, a trial court is not required to identify and discuss the factors it relied on in reaching its award. *Carman v. Carman*, 109 Ohio App.3d 698, 703 * * * (12th Dist.1996).

**{¶59}** "When a party fails to request findings of fact and conclusions of law, we presume the trial court considered all the factors in R.C. 3105.18 and all other relevant facts in a case. *Id.* citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 356 * * * (1981). "'Despite the presumption that the trial court considered the R.C. 3105.18 factors, the court is still required to provide some illumination as to its underlying reasons or basis for the award of spousal support. *Lambert v. Lambert,* 11th Dist. No. 2004-P-0057, 2005-Ohio-2259, * * * at ¶23. The court's basis for spousal support is necessary to facilitate an adequate appellate review. *Id.* at ¶22.' *Derrit v. Derrit*, 163 Ohio App.3d 52, 2005-Ohio-4777, * * *, ¶30 (11th Dist.)." (Parallel citations omitted.)

**{¶60}** In the instant matter, neither party requested findings of fact and conclusions of law following the magistrate's decision. Thus, we presume the trial court considered all the pertinent factors in fashioning its spousal support award. *Taylor, supra,* at ¶32. The totality of the circumstances show that evidence was presented regarding the R.C. 3105.18 factors, and the trial court reviewed the testimony and exhibits in making its decision to not award spousal support. *See McLeod v. McLeod*,

15

11th Dist. Lake No. 2000-L-197, 2002-Ohio-3710, ¶98, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). The record reveals the spousal support issue was raised before the new magistrate at the August 24, 2017 hearing. The record further reveals that Wife remarried at least once and possibly twice since the parties' divorce. The trial court's decision not to award spousal support to Wife was within its discretion. *Taylor* at ¶14; R.C. 3105.18(C)(1)(n).

{¶61} Wife's second assignment of error is without merit.

{¶62} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.


THOMAS R. WRIGHT, P.J.,

DIANE V. GRENDELL, J.,

concur.