OPINION
{¶ 1} Defendant-appellant/cross-appellee, Harold Grosnickle III, appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, dividing property in a divorce case. Plaintiff-appellee/cross-appellant, Michelle Grosnickle, cross-appeals. We affirm in part, reverse in part, and remand.
 {¶ 2} Appellant ("Harold") and appellee ("Michelle") married in September 1995. The couple had one child, daughter Mirella, born in November 1996. On October 15, 2004, *Page 2 
Michelle filed her complaint in divorce. Following a three-day hearing, the trial court issued a decision on December 23, 2005. The court entered a final judgment and divorce decree on March 2, 2006. Harold timely appeals, raising two assignments of error. Michelle cross-appeals, also raising two assignments of error.[1]
 {¶ 3} Appellate review of trial court determinations in domestic relations cases generally entails the abuse of discretion standard.Booth v. Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. This standard is employed in reviewing orders relating to spousal support, child custody, and division of marital property. Booth at 144. "Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." (Citation omitted.) Id.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED IN AWARDING WIFE A SEPARATE PROPERTY INTEREST IN THE SIBCY ROAD HOME OF $22,000 WHERE SUCH AWARD WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE."
 {¶ 6} Sometime after the parties' married, they rented a residence at 8150 Sibcy Road in Maineville, Ohio (the "Sibcy residence") from Michelle's parents, the Nixons. In April 2001, Harold and Michelle secured financing and purchased the Sibcy residence from the Nixons for $131,000. Harold alleges that the loan officer inflated the appraisal value of the house to include the actual value of the property ($109,000) plus $22,000 in gift equity for a *Page 3 
total sale price of $131,000. But Michelle insists that her parents reduced the sales price by $22,000 as an equity gift to her, and that this amount represents a separate property interest in the Sibcy residence to which she alone is entitled.
 {¶ 7} A trial court is required to establish what property is marital property and what property is separate property and equitably divide the property between the spouses in accordance with the provisions of R.C.3105.171. R.C. 3105.171(B). "Marital property" includes all real or personal property acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3). Marital property is distributed either equally or equitably between the parties, subject to the circumstances and the discretion of the trial court. R.C. 3105.171(C)(1). "Separate property" includes "[a]ny gift of any real * * * property or of an interest in real * * * property that is made after the date of marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(vii).
 {¶ 8} The characterization of the parties' property by the trial court is a factual inquiry and will not be reversed where supported by some competent, credible evidence. Barkley v. Barkley (1997),119 Ohio App.3d 155, 159. "This standard of review is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent a reversal." Id. Under this standard, there is a presumption that a trial court's findings are correct because the trial judge is in the best position to ascertain the credibility of the witnesses. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 9} Even should we accept the trial court's conclusion that Michelle was entitled to a $22,000 separate interest in the Sibcy residence,[2]
that interest was destroyed after the *Page 4 
residence was sold because Michelle failed to trace it. The party seeking to have a particular asset classified as separate property bears the burden of tracing the asset to separate property. Peck v. Peck
(1994), 96 Ohio App.3d 731, 734. If such property is commingled with other property and is not traceable, it loses its identity as separate property. R.C. 3105.171(A)(6)(b).
 {¶ 10} Michelle argues that the $22,000 gift equity in the Sibcy residence was traceable from that property to the property the parties' moved into next on Foster-Maineville Road (the "Foster-Maineville residence"). According to her, the equity in the Sibcy residence was clearly preserved and transferred to the Foster-Maineville residence because the parties' used that equity to secure the construction loan to build the Foster-Maineville residence.
 {¶ 11} Trial documents reveal that the Nixons sold the Sibcy residence to Harold and Michelle for a contract price of $131,000 in April 2001. Two years later, Harold and Michelle sold the Sibcy residence for a contract price of $127,000. Had Harold and Michelle netted at least $22,000 from the sale, Michelle's gift equity may have been traceable to the Foster-Maineville residence. However, according to undisputed trial testimony, Harold and Michelle netted only $6,457 from the sale of the Sibcy residence. No evidence was offered that any of these proceeds were invested in the Foster-Maineville residence. Thus, Michelle failed to trace her $22,000 equity interest in the Sibcy residence after its sale. As a result, any separate property interest that Michelle may have had was destroyed after the Sibcy residence was sold and the proceeds commingled with the parties' other property. See R.C. 3105.171(A)(6)(b). *Page 5 
 {¶ 12} We conclude that the trial court abused its discretion in determining that Michelle was entitled to a $22,000 separate property interest in the Sibcy residence. Harold's first assignment of error is sustained.
 {¶ 13} Assignment of Error No. 2:
 {¶ 14} "THE TRIAL COURT ERRED IN VALUING THE NIXON PLUMBING COMPANY, INC. AT $51,000 WHERE THAT VALUATION WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE."
 {¶ 15} Cross-Assignment of Error No. 1:
 {¶ 16} "THE TRIAL COURT ERRED PICKING A VALUATION DATE OF THE MARITAL BUSINESS AFTER IT SUFFERED A POST SEPARATION/POST DIVORCE FILING DECLINE IN VALUE CAUSED BY HUSBAND AFTER HE FORCED WIFE OUT OF THE BUSINESS AND TOOK THE BUSINESS UNDER HIS EXCLUSIVE CONTROL."
 {¶ 17} Because Harold's second assignment of error and Michelle's first cross-assignment of error relate to the trial court's valuation of the marital business, we shall address them together.
 {¶ 18} After the parties' wed, Mr. Nixon offered Harold a job working for his plumbing company ("Nixon Plumbing"). Harold worked as an employee for five years. In 2002, Mr. Nixon gave Michelle and Harold each a five percent ownership interest in the company as a payment bonus. In April 2003, the couple purchased the remaining 90 percent of the company for an additional $41,000. Harold participated only in the physical labor portion of the business. Michelle handled all business and administrative matters for Nixon Plumbing from the time the couple became full owners until their separation in October 2004. Both parties' agree that the business grew and became more profitable during the time the couple ran it together.
 {¶ 19} For purposes of property division, the trial court determined that Nixon *Page 6 
Plumbing was still worth the $51,000 total price the parties' paid to acquire it. Harold maintains that this value is too high, and that the company is worthless. On appeal, he emphasizes that Nixon Plumbing was debt-free when they purchased the remaining 90 percent of the company. He argues that the large amount of debt amassed by the business since that time should offset the court's valuation of the business. Harold also contends that the profit-making capabilities of the business have decreased since he and his wife's separation for various reasons, and that this should be taken into account as well.
 {¶ 20} Michelle believes that the trial court valued Nixon Plumbing too low. She agrees that the value of the business has declined since the couples' separation and her departure from the company. She argues that the trial court should have chosen a valuation date for the business prior to this decline in value.
 {¶ 21} The trial court's valuation of Nixon Plumbing will not be reversed absent an abuse of discretion. Gregory v. Kottman-Gregory, Madison App. Nos. CA2004-11-039, -041, 2005-Ohio-6558, ¶ 15. Neither party submitted appraisals of the business. The trial court found that the misconduct of both parties' contributed to the economic decline of the business. Michelle fired company employees and cancelled the company's line of credit. Her father locked the building allegedly due to nonpayment of rent, preventing Harold from accessing his tools, company truck, and business phone for several days. Her departure from the business also left Harold to assume the administrative and business duties of the company, with which he had no experience. On the other hand, Harold neglected to diligently return calls and pursue business opportunities. He worked less hours due to his alleged emotional troubles. After Michelle fired the employees and removed the line of credit, Harold did not obtain new employees or attempt to secure additional cash.
 {¶ 22} The trial court made detailed findings regarding the debt, assets, and gross receipts of Nixon Plumbing at the time of valuation. The court found that the business had *Page 7 
substantial value prior to the parties' separation, and that the value plummeted due to the conduct of both parties. However, the court determined that the business still retained value and potential for profitability. The trial court settled upon the $51,000 total purchase price paid by Harold and Michelle to acquire the business and concluded that the business was still worth that amount.
 {¶ 23} After reviewing the trial court's thorough analysis and taking into consideration the misconduct of both parties' in causing the decline in the value of the business, we conclude that the trial court did not abuse its discretion in establishing the actual value or valuation date of Nixon Plumbing. Harold's second assignment of error is overruled and Michelle's first cross-assignment of error is overruled.
 {¶ 24} Cross-Assignment of Error No. 2:
 {¶ 25} "THE TRIAL COURT ERRED IN SETTING HUSBAND'S INCOME AT $35,360.00 PER YEAR FOR PURPOSES OF CHILD AND SPOUSAL SUPPORT."
 {¶ 26} Michelle argues that the trial court erred in setting Harold's income at $35,360 because his earning capacity is higher than that amount as shown by his past earnings. Michelle asserts that the trial court should have estimated Harold's income based upon his earnings prior to the degeneration of Nixon Plumbing following the parties' separation.
 {¶ 27} The trial court is vested with broad discretion in determining whether or not an award of spousal support is appropriate. SeeHolcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130-31. In making such a determination, a trial court must consider the factors set forth in R.C.3105.18(C)(1). Among these factors is each party's income, earning capacity, age, mental and emotional condition, standard of living, education, assets and liabilities. Other factors include consideration of the duration of the marriage and lost income capacity due to a party's fulfillment of marital responsibilities. In addition to the statutory factors, a trial court is free to consider any other factor it deems relevant and equitable. See R.C. *Page 8 3105.18(C)(1)(n).
 {¶ 28} As for child support, R.C. Chapter 3119 sets forth the provisions for calculating an obligor's child support payments. The trial court must use the applicable computation worksheet, see R.C.3119.022 and 3119.023, combined with the basic child support schedule provided in R.C. 3119.021. The resultant figure represents the amount of child support due and is rebuttably presumed to be correct. See R.C.3119.03. Such a determination shall not be overturned by this court absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142,144.
 {¶ 29} Relevant to setting Harold's income, the trial court made the following findings: At the time of trial, Harold was approximately 31 years old and had a high school education. After attending college for two years, he dropped out to become a plumber. Harold's work experience prior to joining Nixon Plumbing included working on his dad's farm, in his dad's insurance business, and in his dad's drug store. The court found that Harold's income was as follows: $58,630 in 2002;[3] $49,290 in 2003; and $57,841 in 2004. However, in computing Harold's spousal and child support payments, the court set his income at $35,360.
 {¶ 30} As thoroughly discussed above, the court recognized that the value of Nixon Plumbing had sharply decreased since the parties' separation, and in its current state of disarray the company does not possess the same level of profitability that it had exhibited in prior years. The court observed that the considerable amount of time that Harold had cut back on his work hours since the separation to care for his daughter also severely impacted his earning ability. Finally, the court determined that Michelle was underemployed, and imputed wages to her accordingly.
 {¶ 31} After reviewing the record, we conclude that the trial court did not abuse its *Page 9 
discretion when it set Harold's annual income at $36,360. The facts indicate that Harold is not able to earn as much as he did in the years before the parties' separation due to the decreased profitability of Nixon Plumbing. In addition, due to his increased parental responsibilities, Harold is no longer able to work 60 or 70 hours a week to earn the same income as he had in the years preceding the couples' split.
 {¶ 32} Michelle's second cross-assignment of error is overruled.
 {¶ 33} Having overruled Harold's second assignment of error and Michelle's two cross-assignments of error and sustained Harold's first assignment of error, we affirm the portions of the trial court decision valuing Nixon Plumbing and setting Harold's income. We reverse the portion of the trial court decision awarding Michelle a $22,000 separate property interest in the Sibcy residence. We remand the matter for the trial court to reconsider the property division in light of our conclusion that Michelle is not entitled to a $22,000 separate property interest in the Sibcy residence.
 {¶ 34} Judgment affirmed in part, reversed in part, and remanded.
YOUNG, P.J., and POWELL, J., concur.
[1] Custody and parenting time are not at issue on appeal.
[2] The record contains a settlement statement for the loan that Harold and Michelle obtained to purchase the Sibcy residence. Under the heading "Amounts Paid By Or In Behalf of Borrower" is an entry labeled "Gift of equity from Seller," and next to this is listed "$22,000." Correspondingly, under the heading "Reductions In Amount Due to Seller," the statement contains an item labeled "Gift of Equity to Buyer" with "$22,000" listed next to it. Michelle testified that this amount was intended to be a gift to her only. However, this evidence does not necessarily indicate the Nixons' intent to exclusively benefit their daughter by giving $22,000 to her. Both Harold and Michelle are listed as borrowers on the settlement statement. This $22,000 gift equity was not designated for Michelle's benefit alone on the statement. In addition, neither of Michelle's parents testified to support her contention that this amount was a separate gift to her.
[3] It appears that the court accidentally transposed two numbers on Harold's 2002 W-2 form. That form actually lists Harold's 2002 gross income as $58,360. This minor error is harmless, however. *Page 1