DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant/cross-appellee, Brenda L. Walton, and appellee/cross-appellant, Philip M. Walton, appeal a final judgment entry of divorce entered by the Wood County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, the judgment of the trial court is affirmed. *Page 2 
 {¶ 2} Philip and Brenda were married on January 9, 1982. Three children were born as issue of the marriage: Allison, born in 1985; Douglas, born in 1989, and David, born in 1992.[1]
 {¶ 3} On July 9, 2003, Philip filed a complaint for divorce against Brenda, alleging gross neglect of duty and extreme cruelty.[2] Brenda responded with an answer and counterclaim, together with a series of motions that included requests for temporary custody and support, the appointment of a guardian ad litem, and exclusive occupancy of the marital residence. Later, she filed a request for psychological evaluations and a request that the minor children be interviewed in camera.
 {¶ 4} The magistrate in the action appointed attorney Theodore Tucker as guardian ad litem, and held a series of hearings on Brenda's requests for temporary orders and for in-chambers interviews of the children.
 {¶ 5} On January 6, 2004, the magistrate issued an order which denied Brenda exclusive occupancy of the residence and, instead, required her and Philip to rotate in and out of the home for parenting periods, in accordance with the recommendation of guardian ad litem Tucker. The same order appointed Dr. Wayne Graves, on the court's behalf, to perform a psychological evaluation of the entire family. *Page 3 
 {¶ 6} Following the issuance of the January 6, 2004 order, Brenda filed a separate action seeking a civil protection order. On February 5, 2004, the protective order was granted, but with the express limitation that it would not modify the magistrate's order in the current case.[3]
 {¶ 7} With Brenda's assistance, attorney David R. Pheils was hired as attorney for Douglas and David in March 2004.[4] [5]
 {¶ 8} Throughout the course of the proceedings, Philip filed no less than five contempt motions seeking to compel Brenda's compliance with the temporary parenting orders. The magistrate held two separate hearings on the matter — one in April 2004, and one in July 2004 — and on both occasions found Brenda in contempt, but permitted purging. Ultimately, Brenda was ordered to be incarcerated for failure to purge herself from the second contempt filing.[6] *Page 4 
 {¶ 9} On September 16, 2004, Dr. Graves submitted his report and custody recommendations to the court. The court ordered that the report be held under seal, but also that it be made available to counsel for review.[7]
 {¶ 10} Trial proceeded before the magistrate beginning on January 11, 2005, and ending on January 13, 2005. Evidence adduced at trial demonstrated the following facts relevant to this appeal. Upon Philip's filing of the instant action, Brenda filed pleadings stating that Philip had physically abused her. Philip consistently denied any such abuse.
 {¶ 11} Early in the case, Brenda produced color photographs depicting bruises on her body. She stated that she had been physically abused a dozen times during the marriage, and that the bruises depicted in the photographs were the result of various beatings by Philip during the months of October, November, and December 2002, with the last of those incidents having taken place on December 24, 2002. It was later demonstrated that Brenda's photographs had been developed on November 16, 2002, and December 10, 2002 — dates that preceded the alleged final beating. Additional evidence demonstrated that Brenda had a history of engaging in self-mutilation behavior.[8] *Page 5 
 {¶ 12} Brenda used the allegations of physical abuse, not just in support of her position in court, but also as a justification for her clearly concentrated effort to alienate her sons against Philip. Among the ways in which she interfered with Philip's relationship with the boys were her repeated refusals to allow Philip his turn in court-ordered parenting rotations. In addition, Brenda purchased and permitted the boys to install key-locks on their bedroom doors in order that the boys could avoid meals and other contact with Philip during those times he was in charge.
 {¶ 13} According to the court-appointed custody evaluator, psychologist Dr. Wayne Graves, testing revealed that Brenda had manipulated the children, and that such manipulations had the effect of placing the children in a "hyper-responsible and care taking role for their mother." Dr. Graves further opined that such a role would be a "psychologically damaging, debilitating role for them to take on at this age. And in this context between parents, [the children] feel responsible for the decisions in this process. They feel responsible for their mother's well-being to the exclusion of everything else in their life, including their own best interests." In both his report and his trial testimony, Dr. Graves opined that it was in the best interest of the minor boys to be placed in the primary care of their father as quickly as possible. He further recommended that Brenda's contact with the children be limited and supervised. Finally, Dr. Graves observed: "[Mother's psychological status is so dysfunctional that I do not see any remediation possible within any short term time frame as within several years of intense *Page 6 
psychological assistance. I do not expect change to occur there so that she could become by some rehabilitation primary parental responsibility."
 {¶ 14} At the conclusion of all of the testimony, minor children Douglas and David were interviewed by the magistrate in camera.
 {¶ 15} On May 12, 2005, the magistrate issued a decision on all trial matters, including parenting issues. A separate order time-stamped the same day, but journalized the next, ordered an immediate and temporary change in parenting rights and responsibilities and placed both minor children in Philip's custody, with Brenda's parental contact being limited and supervised. Objections by all parties were filed and disposed of by the trial court.
 {¶ 16} Final judgment awarding attorney fees for attorney Pheils — in the amount of $3,500, to be paid by Philip — was journalized on July 19, 2006.
 {¶ 17} Final judgment of divorce was journalized on July 31, 2006. Brenda filed an appeal of the July 31, 2006 entry, and Philip filed a cross-appeal.
 {¶ 18} The assignments of error raised by Brenda are as follows:
 {¶ 19} I. "THE TRIAL COURT ABUSED ITS DISCRETION BY DESIGNATING FATHER AS THE RESIDENTIAL PARENT, BY AWARDING CHILD SUPPORT TO FATHER, AND BY MAKING MOTHER'S VISITS SUPERVISED; SUCH DECISION IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 7 
 {¶ 20} II. "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO AWARD SPOUSAL SUPPORT FOR MOTHER'S LIFETIME."
 {¶ 21} III. "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO GRANT A CONTINUANCE FOR JOYCE WALSH."
 {¶ 22} The single assignment of error raised by Philip is as follows:
 {¶ 23} I. "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED THAT PLAINTIFF-APPELLEE SHOULD PAY A PORTION OF THE FEES OF COUNSEL APPOINTED TO REPRESENT THE MINOR SONS."
 {¶ 24} We begin with Brenda's first assignment of error, wherein she claims that it was both an abuse of discretion and against the weight of the evidence for the trial to: 1) designate Philip as the residential parent; 2) order her to pay child support to Philip; and 3) order that her contact be supervised.
 {¶ 25} The law is well settled that a trial court has broad discretion in determining the custody of minor children, and that, absent an abuse of that discretion, such determinations will not be overturned.Derrit v. Derrit (2005), 163 Ohio App.3d 52, 2005-Ohio-4777, ¶ 63. The trial court, in making child custody determinations, is guided by the best-interest-of-the-child standard. Id. Pursuant to R.C. 3109.04(F)(1), the trial court, in determining the best interest of a child, must consider all relevant factors, including but not limited to the following: *Page 8 
 {¶ 26} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 27} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 28} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 29} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 30} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 31} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 32} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 33} "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
 {¶ 34} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; *Page 9 
 {¶ 35} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 36} The magistrate, in his May 12, 2005 decision, specifically indicated that in determining the best interest of the minor children, he considered the factors set forth at R.C. 3109.04.[9] While acknowledging the children's firmly stated desire to have Brenda as their residential parent, he noted that the children, in their in-camera interviews, had failed to provide any concrete, logical reasons for that decision. He further stated that the boys' obvious disrespect for Philip as their parent had to be weighed against the other factors as provided in the statute. The magistrate additionally determined that Brenda's "fragile" mental health, as indicated by Dr. Graves's evaluation, and the fact that Brenda had not cooperated and facilitated the parenting time for Philip during the divorce proceedings, "vividly" supported a designation of Philip as the residential parent. In conclusion, the magistrate stated: "Even granting this court's usual significant weight to the wishes of the minor children, when balanced against the health and the prior conduct of [Brenda] regarding her disrespect of [Philip] as the father of the children, her interference with his right to have parenting time with the children and his opportunity to parent the children, results in a conclusion that the best interest of the minor children will be served by naming [Philip] as their residential parent and legal custodian." *Page 10 
 {¶ 37} In light of the trial court's careful evaluation of the R.C.3109.04(F)(1) factors, we find there was no abuse of discretion in awarding custody of the children to Philip.[10] Brenda's first assignment of error is, therefore, found not well-taken.
 {¶ 38} Appellant argues in her second assignment of error that that the trial court abused its discretion by failing to award spousal support for Brenda's lifetime.
 {¶ 39} The law vests the trial court with broad discretion in determining whether an award of spousal support is appropriate.Grosnickle v. Grosnickle, 12th Dist. No. CA2006-03-037, 2007-Ohio-3613, ¶ 27. In making this determination, a trial court must consider the factors set forth in R.C. 3105.18(C)(1). Included in these factors is the income of the parties, the earning ability of the parties, the ages and health of the parties, the parties' retirement benefits, the duration of the marriage, the appropriateness of the parties to seek employment outside of the home, the marital standard of living, the education of the parties, the assets and liabilities of the parties, the contribution of either party to the other's education, the cost of education of the party seeking support, the tax consequences of the spousal support award, the lost income that results from the parties' marital responsibilities, and any other factor that the court deems relevant. R.C. 3105.18(C)(1); Derrit, supra, at ¶ 28. *Page 11 
 {¶ 40} The trial court's judgment entry expressly states that the court considered the R.C. 3105.18(C)(1) factors. In particular, the court cited in support of an award of spousal support: the length of the marriage — over 23 years; the discrepancy in the incomes of the parties and their relative earning abilities (based on their experiences, education and training); and the fact that Brenda had primarily been at home raising the children, rather than pursuing a career. The court also considered the retirement benefits of the parties, and stated that although such benefits were equalized at the time of the decision, they would later diverge, with Philip, unlike Brenda, being able to continue to earn a significant income and retirement benefits until he was 65. The court noted that an award of spousal support would be includible in Brenda's income for tax purposes and deductible from Philip's income for tax purposes. The court also noted that the parties had enjoyed a moderate standard of living, and that Brenda's current mental health and lack of education and training would limit her ability to secure meaningful employment in the short term. In conclusion, the court stated, "In consideration of these factors, as well as all others stated in the statute, an award of spousal support to [Brenda] from [Philip] is appropriate." The trial court then awarded Brenda the amount of $1,500 per month, payable for a period of eight years, with the court retaining no jurisdiction to modify the award.
 {¶ 41} Upon review of the trial court's judgment entry, we find that the court, having given full and fair consideration to the R.C. 3105.18
factors in this case, did not *Page 12 
abuse its discretion in awarding spousal support. Accordingly, Brenda's second assignment of error is found not well-taken.
 {¶ 42} Next, we consider Brenda's third assignment of error, wherein she claims that the trial court abused its discretion in failing to grant a continuance for Joyce Walsh.
 {¶ 43} The decision to grant or deny a continuance is a matter left to the broad, sound discretion of the trial judge. Ungar v. Sarafite
(1964), 376 U.S. 575, 589; State v. Wenzlick (2005),164 Ohio App.3d 155, 2005-Ohio-5741, ¶ 23. "Among the considerations that should be evaluated in reviewing a trial court's exercise of discretion are the length of the delay requested; whether other continuances have been requested and granted; any inconvenience to the litigants, witnesses, opposing counsel, and the court; whether the requested delay is for legitimate reasons or is merely dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance that gives rise to the request for a continuance; and any other relevant factors, depending on the unique facts of each case." Wenzlick, supra, at ¶ 25; see, also,Kedler v. Phillips (Dec. 18, 1998), 2d Dist. No. 98-CA-77.
 {¶ 44} Although this action was filed on July 9, 2003, a date for the final hearing was not set by the court until July 2004. In a notice and order, trial was scheduled to occur on October 12 through 14, 2004. On September 9, 2004, defense counsel asked that the trial dates be moved due to her personal medical issues, and that request was granted. In an order filed October 7, 2004, the court scheduled trial for January 10 through 12, 2005. *Page 13 
 {¶ 45} On December 30, defense counsel filed a series of motions, including a new motion to continue the trial because of the unavailability of a subpoena witness. According to the motion, counsel notified Brenda by letter dated December 2, 2004, that witness Walsh would be out of town at the time of trial. In the same letter, counsel recommended that Walsh's testimony be videotaped. Brenda never responded to her counsel's notice and request, and, as a result, the videotaped deposition never took place.
 {¶ 46} On January 4, 2005, the trial judge denied the motion to continue. The motion was renewed at trial, and the magistrate denied that motion as well.
 {¶ 47} In her appeal, Brenda alleges that Walsh had "significant information regarding the subsections of [R.C. 3109.04]," but fails to reveal what that "significant information" might be. Walsh was a social worker who had spent time counseling the minor children. Although the trial went forward without her testimony, her statements regarding the case were sent to and considered by Dr. Graves when he rendered his opinions and recommendations.
 {¶ 48} In light of all of the foregoing, we find that the trial court did not abuse its discretion in denying the continuance. Brenda's third assignment of error is found not well-taken.
 {¶ 49} Finally, we consider Philip's cross-assignment of error, wherein he claims that the trial court abused its discretion when it ordered that Philip should pay a portion of the fees of counsel appointed to represent the minor sons. As indicated above, attorney Pheils was hired as attorney for the minor sons in March 2004. Although the magistrate *Page 14 
had initially struck all of Pheils's pleadings from the record on May 13, 2004, once it became clear that the guardian ad litem's recommendations would likely be contrary to the wishes of the boys, he appointed Pheils as their representative. In the order dated June 17, 2004, the magistrate relevantly stated:
 {¶ 50} "This matter came on for consideration by the Magistrate upon the notification from the Court appointed Guardian Ad Litem, Attorney Theodore Tucker, that a conflict has arisen regarding the Guardian Ad Litem's role of determining the best interest of the minor children and his role as Attorney for the children.
 {¶ 51} "The Court further finds that the services of an attorney for the two remaining minor children of the parties, to wit: Douglas Walton * * * and David Walton * * * is appropriate in this matter at this time.
 {¶ 52} "It is, therefore, the Order of the Magistrate that:
 {¶ 53} "1. Attorney David Pheils, Attorney at Law, 412 Louisiana Ave., Perrysburg, OH 43551, is hereby appointed as Attorney for Douglas Walton and David Walton, effective June 8, 2004.
 {¶ 54} "2. Attorney Pheils shall be compensated at the usual rate of Court appointed counsel in the Wood County Common Pleas Court.
 {¶ 55} "3. Costs to continue." *Page 15 
 {¶ 56} Civ.R. 75(B)(2) provides:
 {¶ 57} "When it is essential to protect the interests of a child, the court may join the child of the parties as a party defendant and appoint a guardian ad litem and legal counsel, if necessary, for the child and tax the costs [.]"
 {¶ 58} The appointment of legal counsel pursuant to Civ.R. 75(B)(2) is within the sound discretion of the trial court. See Pruden-Wilgus v.Wilgus (1988), 46 Ohio App.3d 13, 16 (holding that the appointment of a guardian ad litem pursuant to Civ.R. 75(B)(2) is within trial court's discretion).
 {¶ 59} Here, the court, upon its own motion, properly determined that the appointment of separate counsel for the boys was appropriate in light of the conflict between the custody recommendations of the court-appointed guardian ad litem and the wishes of the minor children.
 {¶ 60} Philip argues that even if the appointment of independent counsel for the children was appropriate, the order requiring Philip to pay that counsel's attorney fees was not, because, according to Philip, independent counsel never truly represented the interests of the minor children but rather served as a second attorney to carry out the agenda of the mother.[11] While it is certainly true that many of Pheils's pleadings *Page 16 
happened to be in line with Brenda's wishes, there is no question but that they clearly reflected the position of the boys, who were unwavering in their desire to be placed with their mother. As Philip's income is substantially greater than Brenda's, the determination that Philip would share in the children's attorney fees was not an abuse of discretion. Accordingly, Philip's cross-assignment of error is found not well-taken.
 {¶ 61} For all of the foregoing reasons, the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant and appellee are ordered to divide the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., William J. Skow, J., Thomas J. Osowik, J. CONCUR.
[1] All three children were minors when this action was started. Six months into the litigation, Allison turned 18.
[2] This was the second time in seven months that Philip sought to terminate the marriage. The first action, filed on December 30, 2002, was voluntarily dismissed.
[3] Although the February 5, 2004 order contained a finding that Brenda had been the victim of domestic violence, a subsequent order issued in the same case contained the decidedly different determination that newly discovered evidence tended to support Philip's denial of abuse.
[4] The magistrate made clear in his January 6, 2004 order that, in this action, daughter Allison was closely aligned with Philip, and that minor sons Douglas and David were closely aligned with Brenda.
[5] On May 13, 2004, the magistrate struck all of attorney Pheils' pleadings from the record. On June 17, 2004, after the guardian ad litem notified the court that his recommendations would likely be contrary to the wishes of the boys, the magistrate appointed Pheils as their counsel. The order made this appointment effective on June 8, 2004.
[6] At Philip's suggestion, the judge eventually ordered Brenda to serve 200 hours of community service in lieu of actual incarceration.
[7] Ultimately, the trial court approved appellate counsel's use of the report for limited purposes on appeal.
[8] Brenda's psychologist, Susan Smitley, testified that Brenda last reported self-mutilation behavior in the summer of 2003.
[9] This portion of the magistrate's decision was incorporated by reference, without modification, into the trial judge's July 31, 2006 final judgment entry of divorce.
[10] Although Brenda's first assignment of error challenges, in addition to the custodial allocation of the minor children, the award of child support to Philip and the order that Brenda's visits with the children be supervised, because the argument set forth in her brief deals only with custody allocation in connection with R.C. 3109.04(B) and gives no attention whatsoever to the matters of child support and supervised visitation, we decline to give those matters any additional consideration.
[11] We note that Philip supports this position, at least in part, by quoting testimony of the minor children that was elicited during the January 12, 2005 in-camera interviews and subsequently sealed by the trial court. How Philip's counsel obtained this information is not clear to us. Nevertheless, because its inclusion in Philip's appellate brief was wholly improper, we will ignore any references to it in our consideration of this appeal. *Page 1