[Cite as *Kolleda v. Kolleda*, 2014-Ohio-2013.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JANE E. KOLLEDA, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-L-069** |
| CHRISTOPHER W. KOLLEDA, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 09 DR 000685.

Judgment: Affirmed.

*Laura A. DePledge,* DePledge Law Office, Inc., 7408 Center Street, Mentor, OH 44060 (For Plaintiff-Appellant).

*David E. Lowe* and *Laura M. Wellen,* Thrasher, Dinsmore & Dolan, 100 7th Avenue, Suite 150, Chardon, OH 44024 (For Defendant-Appellee).

*John W. Shryock,* John Shryock Co., L.P.A., 30601 Euclid Avenue, Wickliffe, OH 44092 (Guardian ad Litem).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Jane E. Kolleda nka Fletcher, appeals the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, granting defendant-appellee, Christopher W. Kolleda's, Motion for Change of Custody and denying her Motion to Show Cause. The issues before this court are whether it is error for a court to change custody based on the custodial parent's intention to relocate out of

state; whether it is in a child's best interest to change custody where, despite ongoing custody issues, there is no substantive change in the situation of the custodial parent or the minor children; and whether it is error for a court not to hold a parent in contempt where the parent admittedly fails to facilitate visitation. For the following reasons, we affirm the decision of the court below.

{¶2} Fletcher and Kolleda are the parents of Patrick Christopher Kolleda, emancipated during the pendency of this appeal, and Casey Ryan Kolleda, a minor child.

{¶3} On October 19, 2010, the parties were granted a divorce and a shared parenting plan was established by the Lake County Court of Common Pleas, Domestic Relations Division.

{¶4} On May 24, 2012, an Agreed Entry to Terminate Final Shared Parenting Decree and Modified Decree for the Allocation of Parental Rights and Responsibilities was filed. The parties agreed that Fletcher would be the "residential parent and legal custodian of the minor children," Patrick (dob 10/01/1995) and Casey (dob 6/25/2001). The parties shared physical custody of the children on alternating weeks.

{¶5} On August 23, 2012, Fletcher filed a Notice of Intent to Relocate and Motion to Modify the May 24, 2012 Entry Re: Parenting Time. Fletcher expressed her intent to relocate to Hillsborough County, Florida, which would make it "necessary to modify the current parenting time schedule, so that the Defendant can still have significant parenting time with the children."

{¶6} On October 3, 2012, Fletcher filed a Motion to Show Cause and Motion for Attorney Fees, based on Kolleda's having "failed and/or refused to provide [her] with her parenting time with Patrick on the alternating week schedule."

{¶7} On October 19, 2012, the domestic relations court appointed John W. Shryock, Esq., as guardian ad litem for the children.

{¶8} On October 30, 2012, Kolleda filed a Motion for Change of Custody.

{¶9} On April 15, 2013, a hearing was held on the Notice of Intent/Motion to Modify, Motion to Show Cause/Attorney Fees, and the Motion for Change of Custody.

{¶10} On June 14, 2013, the domestic relations court issued a Judgment Entry, denying Fletcher's request to relocate the two children to Florida; designating Kolleda the "sole residential parent of both minor children"; and awarding Fletcher "parenting time during the school year under a two week repeating cycle."

{¶11} On July 11, 2013, Fletcher filed a Notice of Appeal. On appeal, Fletcher raises the following assignments of error:

{¶12} "[1.] The trial court abused its discretion by finding a change of circumstances pursuant to R.C. 3109[.04](E)(1)(a)(i-iii) after denying appellant's request to relocate."

{¶13} "[2.] The trial court abused its discretion by failing to maintain appellant as the sole legal custodian of the minor children where no change of circumstances pursuant to R.C. 3109[.04](E)(1)(a)(i-iii) exists."

{¶14} "[3.] The trial court abused its discretion by failing to maintain appellant as the sole legal custodian of the minor children where it is in the best interests of the

3

minor children for appellant to be retained as the legal custodian and residential parent pursuant to R.C. 3109.04(F)(1)(a-j)."

{¶15} "[4.] The trial court erred by failing to make a finding of contempt against appellee for violation of the May 24, 2012 court order and award appellant attorney fees."

{¶16} In the first two assignments of error, Fletcher challenges that a change of circumstances had occurred so as to justify the modification of custody.

{¶17} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and * * * [t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii); *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, paragraph one of the syllabus; *In re S.B.*, 11th Dist. Ashtabula No. 2010-A-0019, 2011-Ohio-1162, ¶ 85 (citations omitted). The change in circumstances necessary to justify a modification of custody "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

4

{¶18} "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Id.* at paragraph two of the syllabus. The determination that a change in circumstances has occurred for the purposes of R.C. 3109.04 "should not be disturbed, absent an abuse of discretion." *Id.* at paragraph one of the syllabus. "Abuse of discretion connotes something more than merely being against the manifest weight of the evidence." *Baxter v. Baxter*, 27 Ohio St.2d 168, 173, 271 N.E.2d 873 (1971). Rather, the decision rendered must be found arbitrary or unreasonable. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Nor may the court of appeals substitute its own judgment for that of the lower court. *Trickey v. Trickey*, 158 Ohio St. 9, 106 N.E.2d 772 (1952), paragraph two of the syllabus.

{¶19} In the present case, the domestic relations court determined the following changes in circumstances had occurred since the May 24, 2012 Agreed Entry to Terminate Shared Parenting:

> Based on the evidence adduced at trial, the Court finds a change has occurred in the circumstances of both children since the last order of May 24, 2012. The two brothers have been living in separate households since August 18, 2012, the first time they have ever lived separate and apart. The evidence shows, given Mother's need to control Patrick's actions and Mother's ability to control Casey's, the boys are left to deal with the physical and emotional separations from each other themselves. This change in

5

circumstances has a material and adverse effect upon the emotional stability of both boys. This is a change of substance, not a slight or inconsequential change * * *.

Mother's intended relocation to Florida compounds the present instability for them. Casey is of the belief he is going to go to school in Florida. Mother testified Casey is looking forward to living in Florida. Mother herself instilled the move to Florida in Casey's mind as a certainty. However, based on the history of litigation between the parents, common sense dictates Mother should have expected Father to oppose a move of the boys. This Judge must question why Mother would set up a move to Florida as a "sure thing" to Casey? Mother's actions show a complete disregard for the judicial process which is charged with the allocation of parental rights and responsibilities.

* * *

This Judge finds the children's environment with Mother is emotionally harmful and dangerous to them based on the totality of the evidence. This also constitutes a change of circumstances which has a material and adverse effect upon the boys.

{¶20} Fletcher argues that the domestic relations court impermissibly cited her desire to relocate to Florida as a change in circumstances justifying a modification of custody. Fletcher relies on the Ohio Supreme Court decision of *Masters v. Masters*, 69 Ohio St.3d 83, 630 N.E.2d 665 (1994), which held that it was "unconscionable," and

6

therefore an abuse of discretion, "for a trial court to modify custody when the only evidence supporting its conclusion is the filing of a motion to remove the child from the state, which reflects a desire to leave the state and which must be filed according to local rule." *Id.* at 86.

{¶21} Fletcher's reliance on *Masters* is unavailing. In *Masters*, the lower court relied on the mother's desire to relocate as the "only evidence" of a change in circumstances to support modifying custody. *Id.* In the present case, the domestic relations court explicitly cited to the fact that Fletcher had created a false expectation in Casey that their moving to Florida was a certainty. The expectations were fostered during repeated trips to Florida and Fletcher's working part-time for a Florida employer on certain weekends. Accordingly, Fletcher's filing of a Notice of Intent to Relocate was not the only evidence cited by the court as a change of circumstances.

{¶22} Just as significant, the domestic relations court identified the fact that Patrick and Casey had been living in separate households for eight months and the deteriorating emotional environment created by Fletcher as additional changes in circumstances.

{¶23} In support of these findings, the domestic relations court noted the following: On August 18, 2012, an "incident" occurred between Fletcher and Patrick. Since that time, Patrick has refused to return to Fletcher's home. Fletcher contacted the police. Patrick made allegations of abuse against Fletcher to the police. The court did not credit the veracity of the allegations, but acknowledged that "Patrick's statements to the reporting officers as to why he did not wish to return to Mother's home reflect the intensity of the anger * * * Mother's words and actions have created within him."

**{¶24}** The domestic relations court noted a volatile argument between Fletcher and Patrick over money in July 2012.

**{¶25}** The domestic relations court noted that Fletcher retained Patrick's temporary driving permit following these incidents as "leverage to have Patrick return to her home and acquiesce with her demands," contrary to a court order that "neither party shall interfere with * * * the minor children from * * * obtaining and maintaining their driver's licenses."

**{¶26}** The domestic relations court further noted evidence that, in September 2012, Fletcher hung up on Patrick when he tried to call her and did not return a second call after Patrick had left a message. In December 2012, the court noted that Fletcher did not attempt to call Patrick, leave a gift, or otherwise acknowledge his birthday.

**{¶27}** Finally, the domestic relations court noted that, in April 2013, Fletcher took Casey to the police department to make a report against Patrick, because Patrick had pushed Casey into a table, causing a bruise. The court found that Fletcher's conduct reflected her "anger against her own son, Patrick, when he didn't acquiesce to her wishes in July and August 2012," and questioned "if Mother is trying to turn Casey against his brother, since Patrick has wanted to spend more time with his Father, and further, he now wants to reside with Father."

**{¶28}** With respect to Casey, the domestic relations court considered various text messages between Fletcher and him, which the court found "juvenile in nature": "Although intended to be reassuring to Casey, the texts are age appropriate for a much younger child rather than an 11-year-old. The evidence shows Mother has encouraged Casey's dependence on her rather than helping him be self-sufficient."

8

{¶29} Fletcher contends that the domestic relations court's decision focuses on "a few insignificant incidents," which are "not atypical [of] situations that occur in divorced families." We disagree. The incidents and situations cited by the court are substantial enough to constitute a change in circumstances. While the circumstances of the present case do not necessarily compel that conclusion, such a determination was well within the court's discretion.

{¶30} The first two assignments of error are without merit.

{¶31} In the third assignment of error, Fletcher maintains that the best interests of the children favor her retaining custody.

{¶32} The domestic relations court made the following findings, pursuant to R.C. 3109.04(F)(1), regarding the best interests of the children:

> *(a)* ***The wishes of the children's parents regarding the children's care:*** Mother wants to relocate to Florida with both children; however, she readily agrees to relocate to Florida with only Casey, if the court so orders. Father requests he be the sole residential parent of both boys.
>
> *(b)* ***In camera interview:*** Such occurred here. Casey loves both parents and looks forward to living in Florida. Patrick wishes to remain in Ohio in Father's household.
>
> *(c)* ***Children's interaction and interrelationship with the children's parents, siblings and any other person who may significantly affect the child's best interest:*** Patrick gets along well with his Father; the record and the evidence show his

9

relationship with his Mother is seriously damaged due to Mother's interference over the years in his relationship with Father. Patrick did not see his Father for a lengthy period of time after the divorce due to sexual abuse allegations Mother leveled against Father as to Casey. * * * Mother's allegations were investigated by a number of agencies in Lake County which took a long time to conclude. Patrick, Casey and Father's parenting time was greatly reduced for about 14 months. No charges were filed against Father as a result of Mother's accusations.

It is clear Casey is much closer to Mother; he visits with Father and enjoys same once there. Curiously, there was no evidence as to the siblings' relationship with each other over the years and at present. The only evidence as to the siblings' relationship was as to the incident at Father's apartment before trial which involved the Mentor-on-the-Lake Police Department and Casey's police report.

Mother testified as to having no family in northeast Ohio. She has step-parents, friends, cousins and other family members throughout Florida. Father testified he has family in northeast Ohio. To what extent was not in evidence. Neither party provided evidence as to the depth of the children's relationships with others in that parent's family.

**(d)** ***Child's adjustment to home, school and community:***
Both boys have IEP's. Casey has pre-dyslexia; Patrick also has same, along with a non-verbal learning disability and ADHD. Patrick's sports are football and baseball; Casey plays football. Patrick is more comfortable in Father's home; Casey is more comfortable at Mother's.

**(e)** ***Mental and physical health of all persons involved:***
Father is 51; Mother is 47. The parents and children are in satisfactory physical health with no evidence to the contrary. Mother is a believer in holistic medical remedies * * *; Father disputes the effectiveness of said remedies. Patrick takes Risperdal® for his ADHD. This Judge submits each parent has a critical unmet need for individual counseling by a licensed professional. The children also need counseling to better understand the situations they have been put in by their parents. The brothers have endured intense litigation since their parents' divorce case was filed on October 27, 2009, almost four years ago.

**(f)** ***Parent more likely to honor and facilitate court approved parenting time or visitation and companionship rights:*** The case history shows each parent has difficulty in doing so. Mother interferes with Casey's time with Father; Father interferes with Patrick's time with Mother. * * * This Judge finds, based on the

totality of the evidence * * *, Father is more likely to facilitate Court-approved parenting time.

* * *

*(j)* ***Whether either parent has established a residence or is planning to establish a residence outside the state:*** Pursuant to the Agreed Judgment Entry filed May 24, 2012, Mother is the sole residential parent of both children. She filed her intent to relocate to Florida on August 23, 2012, less than 90 days after she was designated as the sole residential parent of the boys.

* * *

Based on the preceding analyses of the factors of Revised Code 3109.04(F)(1), the Court finds the brothers have been prevented from developing emotionally, healthy stable relationships with each other since May 24, 2012 as a result of Mother's conduct. Mother has now assisted Casey in bringing law enforcement into the brothers' relationships between themselves [sic]. In particular, Mother's need to control Patrick's actions since the last court hearing and her inability to do so has become quite intense.

* * *

The Court finds a modification in the designation of the residential parent is in the best interest of the children. The Court finds Mother's interference with her son Patrick since May 24, 2012 and her manipulation of Casey to believe he is moving to Florida is

highly dangerous to both children's present and continued emotional well being. * * * The Court finds a modification in the designation of residential parent to Father is necessary to serve the best interests of the two boys. The Court finds the harm likely to be caused by a change in environment to Father's [sic] is outweighed by the advantages of the change in environment to the children with Father as their residential parent. The boys will remain in the same school system; they can participate in their usual sports and keep their circle of friends and visit extended family in Ohio.

{¶33} Fletcher asserts that the domestic relations court "correctly applied the best interest test, but * * * incorrectly reached the conclusion that modification was in the best interests of the minor children." Fletcher fails to present a convincing argument that the court's conclusion was an abuse of its discretion.

{¶34} Fletcher argues that the domestic relations court's focus on her desire to relocate to Florida is misguided – since the court denied the request, her desire to relocate should have been accorded minimal consideration. We disagree. Fletcher's conduct went beyond the mere desire to relocate. As noted above, Fletcher took the children on several lengthy vacations to Florida, began part-time employment in Florida, and created the expectation in Casey that he would be living in Florida.

{¶35} Fletcher maintains that the siblings' living in separate homes since August 2012 was the "direct result" of Kolleda's "repeated and continuous refusals to facilitate parenting time between Patrick and Appellant." On the contrary, the domestic relations court acknowledged that Kolleda has interfered with Fletcher's parenting time with

Patrick. However, the court also recognized that Fletcher herself is primarily responsible for the deterioration of her relationship with Patrick.

{¶36} Finally, Fletcher argues that the current circumstances affecting the children, such as Fletcher's advocacy of holistic medicine and the parties' inability to effectively parent the children together, existed prior to the May 2012 Agreed Entry to Terminate Shared Parenting and, therefore, favor the maintaining of the current custodial arrangement. Again, we disagree. Having determined that a change in circumstances existed sufficient to reconsider the custodial arrangement, the domestic relations court has the ability and obligation to consider all factors that bear on the children's best interests, not merely those factors that have arisen since the preceding custody entry. *In re Powell*, 11th Dist. Lake No. 2000-L-044, 2001 Ohio App. LEXIS 2569, 11 (June 8, 2001) ("[o]nce a determination of a change of circumstances has been made, a trial court may consider prior facts for purposes of determining what is in the best interest of the child").

{¶37} The third assignment of error is without merit.

{¶38} In the fourth and final assignment of error, Fletcher asserts that the domestic relations court erred by not holding Kolleda in contempt and awarding her attorney fees.

{¶39} It has been noted that the domestic relations court did not render an express judgment with respect to the contempt motion, although it recognized that the hearing was being held, inter alia, on Plaintiff's October 3, 2012 motion to show cause and for attorney fees.

14

{¶40} This court has held that, "when a trial court enters and journalizes a final judgment that grants relief adverse to or inconsistent with the relief sought in a pending motion, it may be presumed that the court intended to deny that motion." *Aurora Loan Servs., LLC v. Cart*, 11th Dist. Ashtabula No. 2011-A-0070, 2012-Ohio-5024, ¶ 17. This presumption has been applied to motions for contempt. *Stemple v. Dunina*, 2nd Dist. Miami No. 04CA40, 2005-Ohio-5590, ¶ 24.

{¶41} In the present case, Fletcher filed a Motion to Show Cause, based on Kolleda's purported interference with her visitation rights, and a Motion for Attorney Fees, based on the same conduct. The domestic relations court expressly ordered Fletcher to pay her own attorney fees in addition to the costs of the action and found that Kolleda was "more likely to facilitate Court-approved parenting time." As these determinations are inconsistent with finding Kolleda in contempt, it is presumed that Fletcher's Motion to Show Cause was denied.

{¶42} A reviewing court "will not reverse the decision of the court below in a contempt proceeding in the absence of a showing of an abuse of discretion." *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981).

{¶43} In the present case, the domestic relations court made the finding that both parties have interfered with each other's visitation rights. With respect to Patrick, Kolleda's interference consisted of his failure to promote or encourage Patrick to visit with his mother, rather than affirmative acts hindering visitation from occurring. Accordingly, the decision not to award attorney fees to either party is within the court's discretion.

{¶44} The fourth assignment of error is without merit.

{¶45} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, granting Kolleda's Motion for Change of Custody and denying Fletcher's Motion to Show Cause is affirmed. Costs to be taxed against appellant.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

{¶46} I concur in the majority's disposition of the fourth assignment of error. However, I respectfully find flaws in the proceedings below which convince me the case should be reversed and remanded. Neither boy was a party to the case. The evidence at trial revealed the boys rotated weekly between their parents, with mother as residential parent. The elder, Patrick, evidently did not wish to be with his mother, but only with his father. The younger, Casey, preferred being with his mother, and wished to move with her to Florida. Each parent wanted to be residential parent for both children. The guardian ad litem testified he believed the boys' best interest would be served by continuing the custody and visitation schedule which already existed in place. Based on its in camera interview, the trial court determined, "Casey loves both parents

16

and looks forward to living in Florida [with mother]. Patrick wishes to remain in Ohio in Father's household." However, no recording was made of the in camera interview.

**{¶47}** In sum, both boys evidently had conceptions of their best interests which conflicted with that of the guardian ad litem, and, ultimately with the best interest determination made by the trial court. Under the circumstances, I believe each should have been made a party to the case, and that each required legal counsel, all pursuant to Civ.R. 75(B)(2).

**{¶48}** The U.S. Constitution, Fourteenth Amendment, Section 1 establishes that no state shall make or enforce any law denying all citizens equal protection and due process. Article I, Section 2, Ohio Constitution, and Article I, Section 16, Ohio Constitution, mirror these provisions. These children are citizens of Ohio and the United States. Neither the federal nor the state constitutional provisions assuring equal protection and due process differentiate between persons below the age of majority, and those above. Their vital interests were at stake. I believe their rights to equal protection and due process were violated, since they were not allowed to participate in these proceedings to determine which parent would be residential parent.

**{¶49}** I respectfully do not find the fact that an in camera interview occurred is sufficient to cure this defect. I am aware that certain of our appellate courts have held that no recording of an in camera interview conducted pursuant to R.C. 3109.04(B)(2) must be made, unless a party so moves. *Wilson v. Wilson*, 4th Dist. Lawrence No. 09CA1, 2009-Ohio-4978, ¶8 (collecting cases). However, this court has held that in camera interviews with minors *must* always be recorded in visitation and custody disputes. *Guliano v. Guliano*, 11th Dist. Trumbull No. 2010-T-0031, 2011-Ohio-6853,

17

¶36; *Jackson v. Herron*, 11th Dist. Lake No. 2003-L-145, 2005-Ohio-4046, ¶16. *Accord Pedraza v. Collier*, 3d Dist. Henry No. 7-06-03, 2007-Ohio-3835, ¶27; *Purvis v. Purvis*, 4th Dist. Adams No. 00CA703, 2002 Ohio App. LEXIS 521, *25 (Feb. 4, 2002); *Donovan v. Donovan*, 110 Ohio App.3d 615, 620 (12th Dist.1996). This is so effective appellate review of custody and visitation disputes can be had. *See, e.g.*, *Donovan* at 620. Since we do not have any transcript of the in camera interview in this case, we cannot consider what the children said.

{¶50} Further, I believe proper interpretation of Civ.R. 75(B)(2), providing that courts may make children parties to these cases and appoint counsel for them, and Sup.R. 48(D)(8), requiring that guardians ad litem request appointment of such counsel when the guardian knows his interpretation of best interest conflicts with that of the child, mandates reversal. The guardian knew his interpretation of best interest conflicted with that of the boys, as did the trial court. Ohio case law establishes that in such situations, the trial court *should* appoint separate counsel. *See, e.g., Walton v. Walton*, 6th Dist. Wood No. WD-06-066, 2007-Ohio-4325, ¶59 (appointment of separate counsel for minors is proper under Civ.R. 75(B)(2) when the recommendations of the guardian ad litem conflict with the wishes of the children).

{¶51} As the boys were not parties nor represented at trial, and could not participate effectively in it, I would reverse and remand on that basis.

{¶52} I respectfully concur in part, and dissent in part.